[No. B198309. Second Dist., Div. One. Jan. 7, 2009.]

KAREN A. CLARK, Plaintiff and Appellant, v.
MAHVASH MAZGANI, Defendant and Appellant.

## Counsel

Blum Collins and Steven A. Blum for Plaintiff and Appellant.

Law Offices of Yevgeniya G. Lisitsa and Yevgeniya G. Lisitsa for Defendant and Appellant.

## OPINION

## WEISBERG, J.*—

### SUMMARY

A landlord successfully evicted a long-term tenant from a rent-controlled apartment, ostensibly to free the unit for occupancy by the landlord's daughter. The landlord's daughter never moved in, and the tenant sued the landlord for fraud and unlawful eviction, and failure to pay relocation expenses. The landlord responded with a special motion to strike (Code Civ. Proc., § 425.16), arguing the tenant's complaint arose from the landlord's acts or statements in furtherance of her constitutional rights. The trial court agreed, and granted the motion. We conclude the tenant's claims did not arise from a protected activity—they are based on the landlord's violation of rent control laws, not on actions in furtherance of the right of free speech or petition. Accordingly, we reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

██ Defendant and Appellant Mahvash Mazgani owns a triplex in the Westwood area of the City of Los Angeles. The property is subject to the Rent Stabilization Ordinance of the City of Los Angeles (RSO), which restricts the circumstances in which a landlord may effect an eviction. (L.A. Mun. Code (LAMC), § 151.09, subd. A; see also Civ. Code, § 1947.10, subd. (a).) Plaintiff and appellant Karen A. Clark was Mazgani's tenant for about eight years and paid a monthly rent of approximately $1,100. The RSO permits eviction of a tenant from a rent-controlled apartment if the landlord intends to remove the unit from the rental market in order to free it for occupancy by a member of his or her immediate family. (LAMC, § 151.09, subd. A.8.a; Civ. Code, § 1947.10, subd. (a).)

In January 2006, after serving and filing the requisite notices, Mazgani filed an unlawful detainer action against Clark to evict her from her apartment so Mazgani's daughter could move into that unit. Mazgani prevailed in that action, and Clark was evicted in April 2006.

In September 2006, Clark filed this action against Mazgani. Clark alleged three causes of action: violation of the RSO, fraud, and unfair business practices (in violation of Bus. & Prof. Code, § 17203). Clark alleged that, following her eviction, Mazgani's daughter never moved into Clark's former

---

*Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

apartment. Clark claimed Mazgani made fraudulent misrepresentations in the unlawful detainer action and never meant for her daughter to reside in Clark's former apartment. Instead, and in violation of the RSO, Mazgani purposefully kept the apartment unoccupied (at least until this lawsuit was filed) and performed renovations, with the goal of reletting the unit to a new tenant for a higher monthly rent. Clark sought an order reinstating her tenancy, and statutory and punitive damages. In addition, under the RSO, Mazgani was required to pay Clark a $3,000 relocation fee at the time of her eviction. (LAMC, § 151.09, subd. G, G.2.)[1] Mazgani had acknowledged that debt and had given Clark a check for that amount. However, she stopped payment on her check. Clark claimed Mazgani still owed her the relocation fee.

Mazgani responded to the complaint by filing a SLAPP (strategic lawsuit against public participation) motion. (Code Civ. Proc., § 425.16.) She contended Clark's complaint arose from Mazgani's privileged communications, made in the course of proceedings before the Los Angeles City Housing Department and in the unlawful detainer action, and from the acts of filing and serving the eviction notice. The trial court agreed and granted the motion. Judgment was entered on May 30, 2007, after a hearing on a motion for attorneys' fees, and the action was dismissed. Mazgani appealed. Clark filed a cross-appeal.

## DISCUSSION

Both sides filed timely appeals. We turn first to Clark's appeal, as our disposition of that matter renders Mazgani's appeal moot.

Clark contends the trial court erred in granting the SLAPP motion because Clark's claim[2] did not arise from Mazgani's protected activity taken in furtherance of her right of free speech or petition. We agree.

Code of Civil Procedure section 425.16 (section 425.16) sets forth the procedure for bringing a special motion to strike in lawsuits filed primarily to "chill" the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. (§ 425.16, subd. (a); *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 197 [46 Cal.Rptr.3d 41, 138 P.3d 193].) The statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike,

---

[1] In September 2008, the relocation fee was increased to $9,300 to $17,600 for evicted tenants who have occupied their units for at least three years. (LAMC, § 151.09, subd. G.)

[2] Clark pled three causes of action. Both parties acknowledge, however, that all three are essentially the same claim, with different prayers for relief.

unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) An " 'act in furtherance of a person's right of petition or free speech' " includes any written or oral statement made before a legislative, executive, or judicial body, or any other official proceeding authorized by law, or in connection with an issue under consideration by such body or in such proceeding. (§ 425.16, subd. (e)(1), (2).) If this showing is made, the movant need not separately demonstrate the statement also concerns an issue of public significance. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

■ The trial court undertakes a two-step process in determining the merits of a SLAPP motion. First, in order for a complaint to be subject to a SLAPP motion, the court must decide if the defendant has made a threshold showing that the challenged claims arose from his or her protected activity. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712 [54 Cal.Rptr.3d 775, 151 P.3d 1185]; *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906 [120 Cal.Rptr.2d 576].) If the defendant fails to satisfy this burden, the complaint is not subject to a motion to strike and the analysis ends. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 [124 Cal.Rptr.2d 519, 52 P.3d 695].) But, if the trial court finds such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Ibid.*) Our review is de novo. (*Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 158 [64 Cal.Rptr.3d 488] (*Marlin*).)

In analyzing defendant's burden under the first prong of the SLAPP analysis, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*).) The definitional focus is not on the form of the plaintiff's cause of action, but on the defendant's *activity* that gives rise to his or her asserted liability. (*Id.* at p. 92.)

There is no question that the prosecution of an unlawful detainer action is indisputably protected activity within the meaning of section 425.16. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734–735 [3 Cal.Rptr.3d 636, 74 P.3d 737]; *Navellier, supra,* 29 Cal.4th at p. 90; *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 [67 Cal.Rptr.3d 190] (*Birkner*).)

■ Clark's complaint, however, is not premised on Mazgani's protected activities of initiating or prosecuting the unlawful detainer action, but on her removal of the apartment from the rental market and fraudulent eviction of Clark for the purpose of installing a family member who never moved in. "Terminating a tenancy or removing a property from the rental market are not

activities taken in furtherance of the constitutional rights of petition or free speech." (*Marlin, supra,* 154 Cal.App.4th at p. 161; see *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1318 [135 Cal.Rptr.2d 903].) " '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' " (*Marlin, supra,* 154 Cal.App.4th at p. 160, quoting *Navellier, supra,* 29 Cal.4th at p. 89.) The pivotal question " 'is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.' " (*Marlin,* at p. 160, quoting *Navellier,* at p. 89.)

*Marlin* is instructive. There, a landlord filed notice under the Ellis Act (Gov. Code, § 7060 et seq.) of its intention to permanently remove units from the rental market. The Ellis Act allows landlords who comply with its provisions to go out of the rental business even if doing so would otherwise violate a local rent control ordinance. Tenants subjected to the notice sued the landlord challenging its right to invoke the Ellis Act. The landlord responded with a SLAPP motion, arguing the tenants' action arose from the landlord's filing and service of the Ellis Act notices. This district's Division Seven disagreed. The court was willing to assume that filing and service of the eviction notices constituted protected free speech or petitioning activity, but concluded the landlord failed to show the lawsuit arose from any protected activity. The court reasoned that simply because an action was filed *after* Ellis Act notices were served and filed, did not mean *it arose from* or *was based on* those protected activities. (*Marlin, supra,* 154 Cal.App.4th at p. 160.) Rather, "the cause of plaintiffs' complaint was [the landlords'] allegedly wrongful reliance on the Ellis Act as their authority for terminating plaintiffs' tenancy. Terminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech." (*Id.* at pp. 160–161.) "[T]he [plaintiffs'] suit is not based on defendants' filing and serving of a notice required under the Ellis Act, it is based on the [plaintiffs'] contention 'defendants are not entitled to invoke or rely upon the Ellis Act to evict plaintiffs from their home.' " (*Id.* at pp. 161–162.)

A similar result was reached in *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273 [65 Cal.Rptr.3d 469] (*DFEH*). There, the court held that an action against a landlord for disability discrimination for refusal to acknowledge or accommodate a tenant's disability in removing an apartment building from the rental market, and evicting the tenant under the Ellis Act was also not subject to the SLAPP statute. (154 Cal.App.4th at pp. 1284–1285.) As in *Marlin,* the *DFEH* court assumed the landlord's "acts of filing and serving notices of its intent to remove its residential units from the rental market . . . and its filing and prosecuting its unlawful detainer actions against [the tenant]

constituted" protected activities. (*Id.* at p. 1283.) However, the court also found the landlord was not sued because it filed the notices, or because it communicated with the tenant in connection with the eviction process, or even because it filed an unlawful detainer action against her. Although the suit may have been "triggered by" the landlord's filing, serving and processing of the paperwork necessary to remove its units from the rental market, and its filing of an unlawful detainer action, it was not sued because it undertook those protected activities. Rather, the gravamen of the tenant's complaint arose from the landlord's discriminatory failure to accommodate her disability, by extending her tenancy for a year. (*Id.* at pp. 1284, 1287–1288.)

█ The same reasoning applies here. Clark's action against Mazgani is not based on Mazgani's filing or service of the notices of intent to evict, it is not based on anything Mazgani said in court or a public proceeding, and it is not based on the fact that Mazgani prosecuted an unlawful detainer action against her. The complaint is based on Mazgani's allegedly unlawful eviction, in that she fraudulently invoked the RSO to evict Clark from her rent-controlled apartment as a ruse to provide housing for her daughter, but never installed her daughter in the apartment as required by that ordinance, and also that she failed to pay Clark's relocation fee. Mazgani's briefs fail to distinguish the holding in *Marlin*,[3] and fail to address *DFEH* at all. Instead, she offers the decisions in *Birkner, supra*, 156 Cal.App.4th 281, and *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467 [74 Cal.Rptr.3d 1] (*Feldman*) to buttress her claim that the SLAPP motion was properly granted. Those cases are inapposite.

In *Birkner*, tenants sued their landlord for wrongful eviction in violation of San Francisco's rent control ordinance, negligence, breach of the covenant of quiet enjoyment and intentional infliction of emotional distress. (*Birkner, supra*, 156 Cal.App.4th at p. 278.) The sole basis for liability was the landlord's service of an eviction notice and his refusal to rescind it after the tenants informed him they were exempt from eviction based on age and length of tenancy.[4] The court acknowledged the rule articulated in *Marlin*, that terminating a tenancy or removing a property from the rental market does not constitute an activity taken in furtherance of the constitutional right of petition or free speech. (156 Cal.App.4th at pp. 281–282.) But, it found the circumstances of *Marlin* distinct. In *Marlin*, the tenants' claims were based

---

[3] Although Mazgani's in-court statements formed the basis for Clark's eviction and may have triggered this action, Mazgani was not sued for engaging in a protected activity. She was sued under Civil Code section 1947.10, for fraudulently invoking the immediate relative exception to the RSO as the reason to terminate Clark's tenancy.

[4] After he served the eviction notices, the landlord's mother died. He rescinded the notices and the tenants were never evicted, but they sued anyway based on the landlord's initial filing, service and refusal to rescind the notices. (*Birkner, supra*, 156 Cal.App.4th at p. 280.)

on their contention that the landlord was not entitled to rely on the Ellis Act to evict them. In contrast, in *Birkner*, the gravamen of the complaint was the landlord's *service* of the eviction notice under the rent ordinance and his *refusal to rescind* it, activities indisputably protected under the anti-SLAPP statute. (156 Cal.App.4th at p. 283.)

In *Feldman, supra*, 160 Cal.App.4th 1467, tenants refused to vacate an apartment after the landlord demanded higher rent. The landlord filed an unlawful detainer action. The tenants filed a cross-complaint alleging retaliatory eviction, negligence, negligent misrepresentation, breach of the covenant of quiet enjoyment, wrongful eviction, breach of contract and unfair business practices. The unlawful detainer action was dismissed, and the landlord moved to strike the cross-complaint as a SLAPP suit. The Court of Appeal found that, with the exception of the claim of negligent misrepresentation, the tenants' cross-complaint was based on the filing of the unlawful detainer action, service of the notice to quit, and statements made by the landlord's agent in connection with the threatened unlawful detainer. Those activities were not merely *evidence* of the landlord's wrongdoing or activities that "triggered" the filing of an action that arose out of some other independent activity. On the contrary, as was the case in *Birkner*, they *were* the challenged activities and the bases for all but one cause of action. (*Id.* at p. 1483.) The pivotal distinction between the circumstances in *Marlin* and *DFEH*, on one hand, and *Birkner* and *Feldman* on the other, is whether an actual or contemplated unlawful detainer action by a landlord (unquestionably a protected petitioning activity) merely "preceded" or "triggered" the tenant's lawsuit, or whether it was instead the "basis" or "cause" of that suit.

■ As in *Marlin* and *DFEH*, we assume, without deciding, that statements made by Mazgani were in furtherance of her right of petition or free speech. Nevertheless, Clark's claims do not "arise from" Mazgani's conduct in exercising those constitutional rights. The gravamen of Clark's action is her claim that wrongful eviction was the result of fraud in that Mazgani did not fulfill the RSO requirement that her family member reside in the evicted tenant's apartment for at least six months. (Civ. Code, § 1947.10, subd. (a).) That claim could only be raised and determined months after Mazgani accomplished the eviction. A landlord's fraudulent act of terminating a tenancy or removing a unit from the rental market and allowing that unit to stand empty, in breach of the RSO, is an actionable unlawful eviction. (Civ. Code, § 1947.10, subd. (a).) Neither that act, nor the failure to make good on the check tendered to her former tenant, is protected by Mazgani's constitutional rights of petition or speech.

Contrary to her contentions, Mazgani was not sued for exercising constitutional rights. She was sued to compel compliance with the provisions of the

RSO. Clark's suit was unquestionably "triggered by" Mazgani's statements and the documents she filed in connection with the unlawful detainer. But the suit is *not based on* those statements or filings. It is based on Clark's claim that Mazgani fraudulently invoked the family occupancy exemption of the RSO to effect Clark's eviction, and failed to fulfill her obligations under that ordinance to install her daughter in the apartment or to pay Clark's relocation expenses. Mazgani's eviction notices and the unlawful detainer action are merely cited as evidence and background to illustrate Mazgani's subsequent violation of the RSO and Civil Code section 1947.10, subdivision (a). To paraphrase an observation in *DFEH*, " '[i]f we were to accept [Mazgani's] argument, then [she] could preclude any judicial review of [her] violation of the rent control law, no matter how egregious, by simply filing a SLAPP motion . . .' " as was done here. (*DFEH, supra*, 154 Cal.App.4th at p. 1287.) We, like the other courts that have considered the issue, remain " 'confident that the Legislature intended no such application of [the rent control laws].' " (*Ibid.*; see *Santa Monica Rent Control Bd. v. Pearl Street, LLC, supra*, 109 Cal.App.4th at p. 1318; *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1398 [126 Cal.Rptr.2d 560].)

Mazgani has not met her threshold burden of showing this suit is based on protected activity. Accordingly, we need not consider whether Clark demonstrated she is likely to succeed on the merits.[5]

---

[5] Based on our conclusion that Mazgani has not prevailed on her SLAPP motion, we also find the trial court erred in awarding her attorneys' fees under section 425.16, subdivision (c).

Our decision renders moot any further issues raised by Mazgani. Appellate courts decide only actual controversies. Consistent therewith, it has been said that an action, originally based upon a justiciable controversy, cannot be maintained on appeal if the questions raised therein have become moot by subsequent events. (*Giles v. Horn* (2002) 100 Cal.App.4th 206, 226–227 [123 Cal.Rptr.2d 735].) "A case is moot when the decision of the reviewing court 'can have no practical impact or provide the parties effectual relief. [Citation.]' " (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214 [130 Cal.Rptr.2d 564].)

However, we note there is no merit in Mazgani's contention that she is (or may be) somehow harmed because, although the trial court granted her SLAPP motion as to every claim, in the minute order issued after the hearing on the motion, the court observed Clark might still be owed the relocation fee, and noted its order was made "without prejudice as to any . . . claims which Clark may elect to bring" regarding payment of the relocation fee. Mazgani's entire appeal is devoted to the assertion that, having granted the SLAPP motion, the court was divested of authority to dismiss any claim "without prejudice," or to invite Clark to "plead around" the facts that had made her original allegations vulnerable to the motion to strike. First, even if Mazgani's legal argument was correct it would be irrelevant. Clark did not seek leave to amend or file a new action; Mazgani has not shown how she is harmed by the court's ruling. Second, any legitimate fear Mazgani may have had was put to rest shortly after the hearing on the SLAPP motion, when the parties met to argue Mazgani's motion for attorneys' fees. Following that hearing, the court entered judgment dismissing Clark's *entire action* "with prejudice." Mazgani's reliance on a conflicting notation in an earlier minute order is unfounded. If there is a conflict between the terms of the minute order and the judgment, the judgment controls. The minute order, or memorandum of decision, is merely a statement of the

## DISPOSITION

The judgment is reversed. Clark shall recover her costs of appeal.

Mallano, P. J., and Rothschild, J., concurred.

A petition for a rehearing was denied February 5, 2009, and the petition of appellant Mahvash Mazgani for review by the Supreme Court was denied April 29, 2009, S170634.

---

judge indicating what his or her decision will be. It is not the judgment, but a basis for the judgment. "Until a judgment is entered, it is not effectual for any purpose (Code Civ. Proc., § 664), and at any time before it is entered, the court may change its conclusions of law and enter a judgment different from that first announced. [Citations.] Moreover, a judge who has heard the evidence may at any time before entry of judgment amend or change his [or her] findings of fact. [Citations.]" (*Phillips v. Phillips* (1953) 41 Cal.2d 869, 874 [264 P.2d 926]; see *Bay World Trading, Ltd. v. Nebraska Beef, Inc.* (2002) 101 Cal.App.4th 135, 141 [123 Cal.Rptr.2d 632].) Thus, even if the SLAPP motion was properly granted Mazgani would fare no better; her appeal is unfounded.