Filed 9/30/13  Law Offices of Jacob Emrani v. Mininsohn CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LAW OFFICES OF JACOB EMRANI, | |
| Plaintiff and Appellant, | G047476 |
| v. | (Super. Ct. No. 30-2012-00565694) |
| PETER J. MININSOHN, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Luis A. Rodriguez, Judge.  Reversed.

Law Offices of Jacob Emrani, Jacob Emrani and Michael P. Hollomon, Jr., for Plaintiff and Appellant.

Peter J. Mininsohn, in pro. per for Defendant and Respondent.

\*          \*          \*

Plaintiff and appellant Law Offices of Jacob Emrani (Emrani) appeals from the trial court's judgment striking his complaint against defendant and respondent Peter J. Mininsohn under California's anti-SLAPP statute (Code Civ. Proc., § 425.16).[1] Emrani represented Ramiro Lopez in an underlying personal injury action until Lopez replaced Emrani with Mininsohn. Based on his contingency fee agreement with Lopez, Emrani claims he holds a lien that entitles him to be paid the value of the services he rendered to Lopez out of any recovery Lopez receives. After Mininsohn obtained a $250,000 arbitration award on Lopez's personal injury claim, Emrani sued Mininsohn because he refused to pay Emrani the amount he claimed as his attorney fees.

The trial court dismissed Emrani's complaint because it was based on Mininsohn's successful petition in the underlying action to confirm Lopez's arbitration award and therefore was constitutionally-protected activity under the anti-SLAPP statute. As explained below, we conclude Emrani's claims did not arise out of the petition to confirm the arbitration award or any other protected petitioning activity. To the contrary, Emrani's claims arose out of his dispute with Mininsohn over the value of the services Emrani provided Lopez and Mininsohn's failure to pay Emrani any portion of the award he received in the underlying action.

I

FACTS AND PROCEDURAL HISTORY

Lopez retained Emrani to represent him in his efforts to recover for the injuries he sustained in an accident involving an Orange County Transit Authority (OCTA) bus. Lopez signed a contingency fee agreement with Emrani, promising to pay Emrani 45 percent of any recovery he received after a lawsuit was filed. If either Lopez

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

2

or Emrani terminated the representation, the agreement granted Emrani a lien for the value of his services against any recovery Lopez received.

In June 2009, Emrani filed a lawsuit against OCTA on Lopez's behalf (Lopez Action). OCTA hired attorney Patrick M. Desmond from the law firm of Woodruff, Spradlin & Smart (Woodruff Firm) to represent it in the Lopez Action. In June 2010, Lopez terminated Emrani's representation and substituted Mininsohn as his attorney. The record does not disclose the precise terms of Mininsohn's fee agreement with Lopez, but he too represented Lopez on a contingency fee basis. Upon receiving the substitution of attorney, Emrani notified Mininsohn, OCTA, and the Woodruff Firm that his contingency fee agreement granted him a lien on any recovery Lopez received.

Lopez and OCTA later stipulated to submit Lopez's claim to binding arbitration. Following a two-day arbitration hearing, the arbitrator awarded Lopez $250,000 in September 2011.[2] Mininsohn notified Emrani that Lopez's claim had been resolved and the two attorneys began negotiating what portion of the arbitration award they each would receive under their contingency fee agreements with Lopez.

Emrani, Mininsohn, and Lopez agreed on the amount of the award Lopez would receive and the amount Emrani and Mininsohn would share, but Emrani and Mininsohn could not agree on how to divide the portion of the award representing their attorney fees. Based on his contractual lien, Emrani instructed Mininsohn, OCTA, and the Woodruff Firm to include his name on any payment to Lopez. Concerned that his and Emrani's disagreement regarding the amount of their fees would delay distribution of Lopez's portion of the award, Mininsohn asked OCTA to pay the award in two checks—one made payable to Lopez for his share of the award and a second made payable to both

---

[2]     The arbitrator actually awarded Lopez $325,900, but the stipulation to submit Lopez's claim to binding arbitration capped his recovery at $250,000.

Emrani and Mininsohn for their share of the award. OCTA, however, refused to provide two checks.

After he could not reach an agreement regarding the amount of fees he and Emrani would receive or the form of OCTA's payment, Mininsohn filed a petition in the Lopez action to confirm the arbitration award and enter judgment against OCTA. Mininsohn also requested that the court order OCTA to name only Lopez on the payment made to satisfy the judgment. Neither Mininsohn nor the Woodruff Firm gave Emrani notice of the petition. The trial court granted the petition in October 2011 and entered judgment for Lopez against OCTA. The court's minute order granting the petition directed OCTA to pay only Lopez when satisfying the judgment.

A few days later, OCTA applied ex parte for an order allowing it to include Emrani's name on its payment to Lopez. OCTA explained it faced potential liability for paying the full judgment to Lopez without including Emrani's name on the payment because Emrani gave OCTA notice of his lien against Lopez's recovery. The trial court denied the application and OCTA paid the judgment by sending Mininsohn a check made payable to Lopez only. Mininsohn cashed the check, disbursed the agreed upon amount to Lopez, and kept the remainder in his client trust account.

In May 2012, Emrani filed this action against Mininsohn alleging claims for intentional and negligent interference with prospective economic advantage, fraud, and conversion. The complaint alleged Mininsohn interfered with Emrani's relationship with Lopez and committed fraud by falsely promising to have OCTA include Emrani when paying Lopez's award. The complaint also alleged Mininsohn converted Emrani's attorney fees by accepting OCTA's payment and refusing to pay Emrani his share. The

4

complaint makes no allegations regarding the petition to confirm the arbitration award or OCTA's ex parte application to add Emrani's name to the payment.[3]

Mininsohn filed a demurrer and special motion to strike Emrani's complaint under section 425.16. Mininsohn moved under the anti-SLAPP statue to strike Emrani's complaint, claiming it arose out of Mininsohn's protected petitioning activity in seeking to confirm the arbitration award in Lopez's favor. The trial court agreed and granted Mininsohn's motion. Because it granted the special motion to strike, the trial court found Mininsohn's demurrer was moot. The court then entered judgment against Emrani and he timely appealed.

II

DISCUSSION

A.    *Legal Background*

1.    The Anti-SLAPP Statute

The anti-SLAPP statute authorizes a special motion to strike any cause of action arising from the exercise of petition or free speech rights:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

"'[S]ection 425.16 requires that a court engage in a two-step process when determining whether a defendant's anti-SLAPP motion should be granted. First, the court decides whether the defendant has made a threshold showing that the challenged

---

[3]    Emrani also named OCTA, Desmond, and the Woodruff Firm as defendants, but later agreed to a settlement with them after they successfully moved to strike his complaint under section 425.16.

5

cause of action is one "arising from" protected activity.  [Citation.]  If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.'  [Citation.]"  (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.)

The dispositive issue on this appeal is whether Mininsohn met his burden to show Emrani's causes of action arose from protected activity.  If Mininsohn failed to make that showing, the anti-SLAPP statute did not apply and the trial court should have denied Mininsohn's motion without considering the merits of Emrani's claims.  (*Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1286 (*Clark*).)

"[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.  [Citation.]  In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech."  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, original italics (*City of Cotati*).)  "'[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. . . .'  [Citation.]"  (*Episcopal Church Cases*, *supra*, 45 Cal.4th at p. 477.)  Indeed, "[a] cause of action may be 'triggered by' or associated with a protected act, but it does not necessarily mean the cause of action *arises* from that act."  (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537, original italics (*Kolar*).)  "'"[T]he [anti-SLAPP] statute's definitional focus is . . . [whether] the defendant's activity *giving rise to his or her asserted liability* . . . constitutes protected speech or petitioning.  [Citation.]"  . . .' [Citation.]"  (*Id*. at p. 1538, original italics; see also *City of Cotati*, at p. 77 ["California courts rightly have rejected the notion 'that a lawsuit is adequately shown to be one "arising from" an act in furtherance of the rights of petition or free speech as long as suit

6

was brought after the defendant engaged in such an act, whether or not the purported basis for the suit is that act itself'"].)

This "'arising from' requirement is not always easily met." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66.) Indeed, the requirement can only be satisfied by showing "the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in [section 425.16,] subdivision (e)." (*Equilon Enterprises*, at p. 66.) That subdivision defines the phrase "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" to include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Contrary to Emrani's contention, all four of these statutory categories do not require the moving defendant to separately show the statement, writing, or conduct from which the plaintiff's claims arose concern an issue of public interest. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109, 1116-1117.) Although categories (e)(3) and (e)(4) have this requirement, categories (e)(1) and (e)(2) merely require the defendant to show the statement or writing was made concerning an issue under consideration by a legislative, executive, or judicial body, or any other legally authorized proceeding. (§ 425.16, subd. (e).) Under the plain terms of categories (e)(1) and (e)(2), it is the context or setting itself that makes the issue public and therefore no separate showing that the statement or writing concerns a public issue is required.

7

(*Briggs*, at pp. 1116-1117; *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1261 ["'statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest'"].)

Moreover, "[i]t is 'the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.' [Citation.]" (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 727, original italics (*Freeman*).) "We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.]" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.)

"In deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' [Citation.]" (*City of Cotati*, *supra*, 29 Cal.4th at p. 79.) "We review de novo the trial court's order granting an anti-SLAPP motion. [Citations.] We do not weigh the evidence; rather, we accept as true evidence favorable to [the plaintiff], and evaluate evidence favorable to the moving parties, to determine whether as a matter of law, it defeats [the plaintiffs'] evidence. [Citations.]" (*Chodos v. Cole* (2012) 210 Cal.App.4th 692, 698-699 (*Chodos*).)

2.      Attorney Lien Principles

"'A lien in favor of an attorney upon the proceeds of a prospective judgment in favor of his client for legal services rendered . . . may be created either by express contract . . . or it may be implied if the retainer agreement between the lawyer and client indicates that the former is to look to the judgment for payment of his fee

8

[citations].' [Citation.]" (*Brown v. Superior Court* (2004) 116 Cal.App.4th 320, 327 (*Brown*).)

"'Unlike a judgment creditor's lien, which is created when the notice of lien is filed [citation], an attorney's lien is a "secret" lien; it is created and the attorney's security interest is protected even without a notice of lien. [Citations.] An attorney may, however, choose to file a notice of lien in the underlying action, and the common practice of doing so has been held permissible and even advisable.' [Citation.]" (*Brown*, *supra*, 116 Cal.App.4th at p. 327.) The failure to file a notice of lien does not affect the lien's validity. (*Carroll v. Interstate Brands Corp.* (2002) 99 Cal.App.4th 1168, 1172-1173.)

"Generally, an attorney's lien is 'equitable in nature.' [Citation.] As our Supreme Court has explained, an attorney's lien is '"an equitable right to have the fees and costs due to him for services in a suit secured to him out of the judgment or recovery in the particular action, the attorney to the extent of such services being regarded as an equitable assignee of the judgment. It is based . . . on the natural equity that a party should not be allowed to appropriate the whole of a judgment in his favor without paying for the services of his attorney in obtaining such judgment."' [Citations.] Nonetheless, liens of this type '"do not operate to transfer a part of the cause of action to the attorney."' [Citations.] In securing such a lien, the attorney acquires a 'professional interest' in the action, but not 'the beneficial rights of a real party in interest.' [Citation.]" (*Little v. Amber Hotel Co.* (2011) 202 Cal.App.4th 280, 290-291 (*Little*).)

"'An attorney's lien is created and takes effect at the time the fee agreement is executed.' [Citation.]" (*Brown*, *supra*, 116 Cal.App.4th at p. 327.) When the lien is tied to the client's contingent recovery, however, the attorney may not enforce the lien until the contingency occurs. The lien becomes unenforceable if the occurrence of the contingency is conclusively foreclosed, such as when a defendant prevails in a contingency fee case. (*Little*, *supra*, 202 Cal.App.4th at p. 293.)

9

An attorney's lien survives the attorney's discharge and continues to entitle the attorney to recover his or her fee from the client's recovery. (*Plummer v. Day/Eisenberg, LLP* (2010) 184 Cal.App.4th 38, 50, fn. 11 (*Plummer*); *Weiss v. Marcus* (1975) 51 Cal.App.3d 590, 598 (*Weiss*).) But "where an attorney has been discharged (with or without cause) by a client with whom the attorney had a contingent fee agreement, upon occurrence of the contingency specified in the agreement, the attorney is limited to a quantum meruit recovery for the reasonable value of his services rendered to the time of discharge." (*Weiss*, at p. 598; see also *Fracasse v. Brent* (1972) 6 Cal.3d 784, 786.)

After the client obtains a judgment or settlement in the underlying action, a discharged attorney must bring a separate, independent action to establish the existence of the lien, to determine its amount, and to enforce it. (*Little*, *supra*, 202 Cal.App.4th at p. 293; *Brown*, *supra*, 116 Cal.App.4th at p. 328.) The attorney has no right to intervene in the underlying action to enforce his or her lien and the trial court in that action has no jurisdiction to determine the existence, validity, or amount of the lien. Indeed, "'[a]n order within the underlying action purporting to affect an attorney's lien is void.' [Citation.]" (*Brown*, at p. 328.)

A third party may incur tort liability for impairing an attorney's rights under a lien against a current or former client's recovery. (*Little*, *supra*, 202 Cal.App.4th at p. 291.) For example, a discharged attorney may maintain an action for conversion, intentional interference with contractual relations, money had and received, and constructive trust against the attorney who succeeded him or her if the successor attorney knowingly disbursed the client's recovery without satisfying the discharged attorney's lien. (*Weiss*, *supra*, 51 Cal.App.3d at pp. 599-601[reversing trial court judgment sustaining successor attorney's demurrer against discharged attorney's complaint alleging these claims]; *Plummer*, *supra*, 184 Cal.App.4th at pp. 45-51 [reversing successor attorney's summary judgment against discharged attorney's conversion and intentional

10

interference with prospective economic advantage claims].) Similarly, "an insurer and the attorneys retained to defend the insureds are liable for intentional interference with the prospective economic advantage of a discharged attorney when, after receiving a notice of lien for attorney fees and costs filed in the case by the discharged attorney, they pay his former client and the latter's new attorney in settlement or in satisfaction of a judgment with knowledge of the lien." (*Levin v. Gulf Ins. Group* (1999) 69 Cal.App.4th 1282, 1287-1288 (*Levin*); see also *Siciliano v. Fireman's Fund Ins. Co.* (1976) 62 Cal.App.3d 745, 753.)

B.      *Emrani's Claims Did Not Arise From Protected Petitioning Activity*

Mininsohn contends "Emrani's lawsuit is subject to the anti-SLAPP statute [because] it is based solely on Mininsohn's right to petition." (Some capitalization omitted.) According to Mininsohn, "[t]he causes of action in the Emrani complaint are clearly based on the filing of the petition to confirm th[e arbitration] award, the concomitant order of the trial court relating to that petition, and the payment of the award pursuant to that order." Mininsohn misconstrues both the basis for Emrani's claims and the scope of the anti-SLAPP statute's protection for petitioning activities.

As we have previously observed, "courts have adopted 'a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16.' [Citation.]" (*Kolar*, *supra*, 145 Cal.App.4th at p. 1537.) Indeed, "[t]he anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation." (*Ibid.*) It does not follow, however, that all claims associated with or related to those activities are subject to the anti-SLAPP statute. (*Ibid.*; *Freeman*, *supra*, 154 Cal.App.4th at p. 729.) As explained above, the moving party defendant must show protected petitioning activity is the gravamen or principal thrust of the plaintiff's claims. (*City of Cotati*, *supra*, 29 Cal.4th at pp. 77-78.) It is not enough

11

that the plaintiff's causes of action were filed after petitioning activity occurred or that the claims relate to petitioning activity; the petitioning activity must give rise to and be the basis for the asserted liability. (*Kolar*, at p. 1537; *Freeman*, at p. 729.)

For example, in *Clark*, the Court of Appeal explained a tenant's fraudulent eviction claim did not "arise from" the landlord's protected petitioning activity even though the landlord's successful unlawful detainer action triggered the tenant's lawsuit: "[The landlord] was not sued for exercising constitutional rights. She was sued to compel compliance with the provisions of the [local rent control ordinance]. [The tenant's] suit was unquestionably 'triggered by' [the landlord's] statements and the documents she filed in connection with the unlawful detainer. But the suit is *not based on* those statements or filings. It is based on [the tenant's] claim that [the landlord] fraudulently invoked the family occupancy exemption of the [local rent control ordinance] to effect [the tenant's] eviction, and failed to fulfill her obligations under that ordinance to install her daughter in the apartment or to pay [the tenant's] relocation expenses. [The landlord's] eviction notices and the unlawful detainer action are merely cited as evidence and background to illustrate [the landlord's] subsequent violation of the [local rent control ordinance] and Civil Code section 1947.10, subdivision (a)." (*Clark*, *supra*, 170 Cal.App.4th at pp. 1289-1290, original italics; see also *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 160-161.)

Similarly, in *State Farm General Ins. Co. v. Majorino* (2002) 99 Cal.App.4th 974, the Court of Appeal explained an insurer's declaratory relief action did not "arise from" the underlying personal injury action even though it sought a declaration regarding the insurer's duty to defend its insured in the personal injury action: "[The injured party's] personal injury suit against the [insureds] did trigger the chain of events that caused [the insurer] to seek a judicial declaration of its coverage obligations. And the nature of the claims in the underlying personal injury case frames the scope of coverage under the [the insurer's] policy. But the action for declaratory relief *arose* from

12

the tender of defense and the terms of an insurance policy . . . , not from the litigation process itself." (*Id*. at p. 977, original italics.)

The mere fact an action relates to an attorney representing a client in an earlier lawsuit does not mean the action necessarily arises from the attorney's protected petitioning activity on the client's behalf. For example, in *California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032 (*California Back Specialists*), the Court of Appeal found a doctor's lawsuit against an attorney for failing to pay the medical liens the attorney's clients granted the doctor against their recovery in an underlying personal injury action did not arise from the attorney's petitioning activity on the clients' behalf. (*Id*. at pp. 1035-1036.) Instead, the doctor's claims against the attorney were based on a dispute between the doctor and the attorney regarding the liens' validity. The underlying personal injury action merely provided the context or background for the doctor's claims. As the Court of Appeal explained, "The anti-SLAPP statute does not apply where protected activity is only collateral or incidental to the purpose of the transaction or occurrence underlying the complaint. [Citation.] [¶] . . . [¶] . . . Not all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16." (*California Back Specialists*, at p. 1037.)

Along the same line, "'California courts have held that when a claim [by a client against a lawyer] is based on a breach of the fiduciary duty of loyalty or negligence, it does not concern a right of petition or free speech, though those activities arose from the filing, prosecution of and statements made in the course of the client's lawsuit. The reason is that the lawsuit concerns a breach of duty that does not depend on the exercise of a constitutional right.' [Citations.] Even though the 'petitioning activity is part of the evidentiary landscape within which [the plaintiff's] claims arose, the gravamen of [the plaintiff's] claims is that [the former attorney] engaged in nonpetitioning activity inconsistent with his fiduciary obligations owed to [the plaintiff]

13

. . . .' [Citation.]" (*Chodos*, *supra*, 210 Cal.App.4th at p. 702; *id.* at p. 706 ["Malpractice involves a breach of duty by neglecting to do an act or doing an act, not the right of petition"]; *Kolar*, *supra*, 145 Cal.App.4th at p. 1540 ["In a malpractice suit, the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so"].)

"In deciding whether an action is a SLAPP, the trial court should distinguish between (1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity." (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1214-1215, original italics.) For example, in *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, a client sued the law firm that previously represented him for breach of loyalty based on the law firm's representation of the client's opponent in an arbitration proceeding. Although pursuing an arbitration proceeding is a protected petitioning activity, the court nonetheless held the breach of loyalty claim did not arise from that activity: "The breach occurs not when the attorney steps into court to represent the new client, but when he or she abandons the old client. . . . In other words, once the attorney accepts a representation in which confidences disclosed by a former client may benefit the new client due to the relationship between the new matter and the old, he or she has breached a duty of loyalty. . . . *Evidence that confidential information was actually used against the former client in litigation would help support damages, but is not the basis for the claim. . . .* [The] claim is not based on 'filing a petition for arbitration on behalf of one client against another, but rather, for failing to maintain loyalty to, and the confidences of, a client.'" (*Id.* at p. 1189, italics added.)

Here, Emrani's claims against Mininsohn do not arise from nor are they based on any petitioning activity Mininsohn undertook in the Lopez Action on his own behalf or on Lopez's behalf. Contrary to Mininsohn's contention, Emrani's claims are

14

not based on Mininsohn petitioning the trial court to confirm the arbitration award, the court's ruling on that petition, or OCTA paying the award as the trial court directed. Indeed, Emrani's complaint does not even mention the petition to confirm the arbitration award or the trial court's ruling on the petition. Nonetheless, even if Emrani's complaint referred to those activities, the gravamen of Emrani's claims is that Mininsohn did not honor the lien and pay Emrani the value of his services.

As explained above, Emrani's contingency fee agreement with Lopez created a lien against the award and gave him an equitable right to have his fees paid out of that award. (*Little*, *supra*, 202 Cal.App.4th at pp. 290-291.) Once Mininsohn had notice of Emrani's lien, he had a duty not to impair the lien and may be held liable in tort for failing to pay Emrani the amount to which he is entitled. (*Plummer*, *supra*, 184 Cal.App.4th at pp. 45-51; *Weiss*, *supra*, 51 Cal.App.3d at pp. 599-601.) It is the breach of that duty that forms the gravamen of Emrani's claims, and that breach of duty does not arise from protected petitioning activity.

The underlying Lopez Action merely provides the context in which Emrani's right to payment arose and the award or judgment in that action is merely the asset to which Emrani's lien attached. At most, Mininsohn's petition to confirm the arbitration award and his opposition to OCTA's ex parte application to include Emrani's name on the payment are evidence Mininsohn did not intend to pay Emrani his fees from the award or judgment. Those actions, however, do not provide the basis for Mininsohn's potential liability for three reasons.

First, the trial court in the Lopez Action lacked jurisdiction to make any order affecting Emrani's lien. (*Brown*, *supra*, 116 Cal.App.4th at p. 328.) Second, any liability Mininsohn has to Emrani arises from failing to pay Emrani his fees out of the award *after* Mininsohn received the award. (*Plummer*, *supra*, 184 Cal.App.4th at p. 45 ["attorneys may maintain conversion actions against those who wrongfully withhold or disburse funds subject to their attorney's liens"]; *Weiss*, *supra*, 51 Cal.App.3d at

15

pp. 599-601 [discharged attorney stated claims against successor attorney for money had and received, conversion, constructive trust, and interference with contractual relationship based on successor attorney disbursing settlement proceeds without paying discharged attorney's lien].) Indeed, it is Mininsohn's refusal to pay Emrani that creates his liability, not the form of OCTA's payment to Lopez. (See *Levin*, *supra*, 69 Cal.App.4th at pp. 1286-1287.) Finally, the act of paying, or refusing to pay, is not a petitioning activity even if the payment relates to a judgment or arbitration award.

Mininsohn argues Emrani's claims are based on protected petitioning activity because Mininsohn merely protected his client's interest in the arbitration award he obtained for his client. According to Mininsohn, Emrani demanded more of the arbitration award than he was entitled to receive and threatened not to endorse any payment on which his name appeared until Mininsohn agreed to pay him the unreasonable amount he demanded.[4] This contention fails for three reasons.

First, as explained above, Emrani's claims are not based on the petition to confirm the arbitration award or the court's order granting that petition. Second, it is illogical to conclude an attorney acting on his or her client's behalf automatically engages in protected petitioning activity. As the *California Back Specialists* court explained, "Not all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16." (*California Back Specialists*, *supra*, 160 Cal.App.4th at p. 1037.) Finally, any contentions regarding the propriety of Emrani's conduct, the validity of his lien, the amount of his fees, or even the adequacy of the allegations in his complaint are irrelevant to the question whether Emrani's claims stemmed from protected

---

[4] We note that in arguing Emrani's claims arise out of protected petitioning activity, Mininsohn does not differentiate between any of Emrani's causes of action, but rather deals with them only as a collective whole. Accordingly, in analyzing the "arising from" requirement, we also will not differentiate the various claims and will focus only on the basis of those claims as a whole.

16

petitioning activity. The first step in the anti-SLAPP analysis is whether the claims arise from protected activity. If this is shown, the court may then move to the second step and consider the merits of the claims. (*Freeman*, *supra*, 154 Cal.App.4th at p. 733 ["These merits based arguments have no place in our threshold analysis of whether plaintiffs' causes of action arise from protected activity. Where [the defendant] cannot meet his threshold showing, the fact he 'might be able to otherwise prevail on the merits under the "probability" step is irrelevant'"].)

In summary, Emrani's action against Mininsohn is simply a fee dispute between two attorneys regarding the amount of fees to which they are entitled from an arbitration award for their successive representation of the same client. That the fee dispute arises out of the attorneys' representation of the client in a particular lawsuit does not mean the dispute arises out of protected petitioning activity. The underlying Lopez Action merely provides the background; it is not the basis for the dispute. Similarly, Mininsohn's petition to confirm the arbitration award does not alter the nature of the dispute. Emrani and Mininsohn disagreed about the amount of their fees before Mininsohn petitioned to confirm the arbitration award and the dispute continued after he petitioned to confirm the award. Emrani's claims are not based on the petition to confirm the arbitration award or any other protected petitioning activity and therefore the trial court erred in ruling the anti-SLAPP statute applied to Emrani's claims.

In concluding Mininsohn failed to meet his burden to show Emrani's claims arise out of protected petitioning activity, we express no opinion on Mininsohn's demurrer, a matter we leave for the trial court's determination on remand.

## III

### DISPOSITION

We reverse the judgment.  Emrani shall recover his costs on appeal.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


IKOLA, J.