[No. G040130. Fourth Dist., Div. Three. Jan. 30, 2009.]

LINDA BAK et al., Plaintiffs and Respondents, v.
MCL FINANCIAL GROUP, INC., et al, Defendants;
THEODORE C. PETERS, Objector and Appellant.

COUNSEL

Edgerton & Weaver, Samuel Y. Edgerton III and Elizabeth Lowery for Objector and Appellant.

Gordon & Rees, Theresa A. Kristovich and Mollie Burks-Thomas for Plaintiffs and Respondents.

OPINION

**RYLAARSDAM, Acting P. J.**—Objector Theodore C. Peters, an attorney for defendants and cross-complainants MCL Financial Group, Inc., and Michael Upton (collectively defendants), appeals from a judgment confirming an award issued by an arbitration panel. He contends the arbitrators exceeded their powers by ordering him to pay $7,500 in sanctions as a result of his conduct during a prehearing dispute over the production of documents and the trial court erred by failing to strike the sanctions order when confirming the arbitration award. Since objector's claims lack merit, we shall affirm the judgment.

FACTS AND PROCEDURAL BACKGROUND

Plaintiffs are seven registered representatives of the Financial Industry Regulatory Authority (FINRA; previously known as the National Association of Securities Dealers or NASD). Before this litigation arose, each plaintiff had been employed by defendants on a commission basis to assist clients with property transfers eligible for tax-free exchanges under the Internal Revenue Code. Each plaintiff had executed a registered representative agreement with defendants that included a clause declaring, "Any controversies or claims arising out of or relating to this Agreement, or breach thereof, shall be resolved in arbitration in accordance with the Code of Arbitration Procedures of the NASD . . . ."

This litigation arose from a dispute over plaintiffs' commissions. Plaintiffs left defendants' employ and sued to recover the amount they believed was due under their respective contracts with defendants. Defendants filed a cross-complaint against plaintiffs and also obtained a preliminary injunction

that prohibited plaintiffs from soliciting defendants' current and prospective clients, the issuance of which this court upheld in a prior appeal. (*MCL Financial Group, Inc. v. Bak* (May 12, 2006, G035192) [nonpub. opn.].)

While the prior appeal was pending, the trial court issued a stay of the lawsuit and directed the parties' dispute be arbitrated before a panel appointed by FINRA. During a prehearing document production and information exchange, plaintiffs delivered documents to defendants. After doing so, plaintiffs discovered the material included 112 pages of documents they claimed were subject to the attorney-client privilege. Plaintiffs sent defendants a letter informing them of the privileged documents, claiming they had been inadvertently produced, and demanding defendants "return them immediately . . . ."

Defendants returned the privileged material. But objector claims that before doing so, he "made a cursory review of the documents," copied them, and then placed the copies in a sealed envelope, which he sent to a staff attorney with FINRA who was handling the case.

Plaintiffs filed an emergency motion with the arbitrators for an order prohibiting defendants "from using the privileged documents" and seeking "destruction of the documents . . . unilaterally sent to [FINRA]." Objector filed a response for defendants, acknowledging they had "agreed not to use the . . . privileged documents . . . ." He further claimed copying the documents was "appropriate."

After a hearing, the panel issued an order that directed objector to pay plaintiffs' counsel "the sum of $7,500[] as a sanction for the copying of privileged documents" and to execute an affidavit that neither he nor anyone in his office retained copies of the privileged material, that they did not give copies to anyone else, and that no other copies of the documents existed. Objector submitted the requested affidavit. He also twice unsuccessfully sought reconsideration of the sanctions award.

Ultimately, the arbitration panel conducted a hearing on the underlying issues and issued an award. In part, the award vacated "[a]ll preliminary injunctions" and confirmed the $7,500 sanctions order issued against objector.

Plaintiffs petitioned to confirm the award. Defendants opposed the request and filed a petition to vacate the award, in part citing the sanctions order as a reason to do so. The trial court struck the portion of the arbitration award that vacated the preliminary injunction, but otherwise granted plaintiffs' petition and entered a judgment confirming it with the sanctions order. By subsequent order the court also dissolved the preliminary injunction.

DISCUSSION

1. *Judgment Confirming the Arbitration Award*

Relying on Code of Civil Procedure section 1286.2, subdivision (a)(4), objector argues the arbitration panel exceeded its powers by imposing sanctions on him and thus the trial court erred by confirming the arbitration award without vacating the sanctions.

First, we note objector relies on the wrong statutory remedy. Code of Civil Procedure section 1286.2 authorizes "the court [to] vacate the award if" it determines one of the grounds listed therein exists. (Code Civ. Proc., § 1286.2, subd. (a).) Here objector does not challenge the entire arbitration award. He asks only "to vacate that portion of the [a]ward which upheld the [s]anctions [o]rder . . . ." (Boldface omitted.) Consequently, what he really seeks is a reversal of the judgment to "correct the award and confirm it as corrected" under Code of Civil Procedure section 1286.6, subdivision (b), which allows a court to do so when "[t]he arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted . . . ."

Objector asserts three grounds for his contention the trial court erred by not eliminating the sanctions order from the arbitration award. First he argues, because he merely appeared as an attorney for one of the parties to the arbitration, the panel lacked the authority to sanction him. Second, he challenges the sufficiency of the evidence supporting the panel's ruling. Third, he contends the sanctions are invalid because the panel failed to comply with the requirements of Code of Civil Procedure section 128.5 before sanctioning him.

"Generally, an arbitrator's decision in a dispute between *parties* to an arbitration agreement is subject to only limited judicial review." (*Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 534 [79 Cal.Rptr.3d 370, 187 P.3d 86]; see also *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11–12 [10 Cal.Rptr.2d 183, 832 P.2d 899].) "When parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision. [Citations.] Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case. Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error, for ' "[t]he arbitrator's resolution of these

issues is what the parties bargained for in the arbitration agreement." ' [Citations.]" (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184 [77 Cal.Rptr.3d 613, 184 P.3d 739].)

However, " ' "[t]he powers of an arbitrator derive from, and are limited by, the agreement to arbitrate. [Citation.] Awards in excess of those powers may, under sections 1286.2 and 1286.6, be corrected or vacated by the court." [Citation.]' [Citation.]" (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1356 [82 Cal.Rptr.3d 229, 190 P.3d 586].) On the other hand, "the deference due an arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers. [Citations.] . . . [¶] Giving substantial deference to the arbitrators' own assessments of their contractual authority is consistent with the general rule of arbitral finality . . . ." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 372–373 [36 Cal.Rptr.2d 581, 885 P.2d 994].) Thus, "[a]ny doubts about the arbitrator's power to decide . . . issues must be resolved in his favor. [Citation.]" (*Roehl v. Ritchie* (2007) 147 Cal.App.4th 338, 347–348 [54 Cal.Rptr.3d 185].)

Plaintiffs and defendants agreed "[a]ny controversies or claims arising out of or relating to" their registered representative agreements, "or breach thereof, shall be resolved in arbitration in accordance with the Code of Arbitration Procedures of the NASD . . . ." In *David v. Abergel* (1996) 46 Cal.App.4th 1281 [54 Cal.Rptr.2d 443], the court affirmed a sanctions award issued against a party to the arbitration, noting the parties agreed "to confer upon their arbitrator the power to 'grant any remedy or relief to which a party is entitled . . . .' " (*Id.* at p. 1283.) "[W]e presume they meant what they said—and our Supreme Court has declared that they will be held to those words. [Citations.]" (*Ibid.*) Here, the arbitration rules authorize the arbitrators to conduct prehearing conferences over document production and information exchanges. (FINRA, Code of Arbitration Procedures, rule 10321.) In addition, the arbitrators were "empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling," and "[s]uch interpretations and actions to obtain compliance shall be final and binding upon the parties."

Objector's first argument is that, because he did not sign the arbitration agreement, the panel lacked authority to sanction him. " 'The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration. [Citation.]' [Citations.]" (*Lee v. Southern California University for Professional Studies* (2007) 148 Cal.App.4th 782, 786 [56 Cal.Rptr.3d 134].) Nonetheless, "limited circumstances exist under which a nonparty to an arbitration agreement

can be bound by someone else's consent (e.g., agency, a spousal relationship or parent/minor child relationship) . . . ." (*Ibid.*; see also *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 242 [54 Cal.Rptr.2d 628].)

FINRA's arbitration rules provide "parties shall have the right to representation by counsel at any stage of the proceedings." (FINRA, Code of Arbitration Procedures, rule 10316.) Objector acknowledges he appeared as counsel for defendants, parties who were bound by the arbitration agreement. "It is . . . well recognized by the authorities that the law of principal and agent is generally applicable to the relation of attorney and client [citation] . . . ." (*Sullivan v. Dunne* (1926) 198 Cal. 183, 192 [244 P. 343]; see also 1 Witkin, Cal. Procedure (5th ed. 2008) Attorneys, § 43, pp. 79–80.)

Objector relies on language in *Channel Lumber Co. v. Porter Simon* (2000) 78 Cal.App.4th 1222 [93 Cal.Rptr.2d 482], which declared "the nature of the role of an outside trial attorney is similar to that of other professionals . . . who are considered independent contractors of their clients. [Citation.]" (*Id.* at p. 1229.) But a review of the case reflects it does not stand as precedent for the broad holding objector asserts here.

*Channel Lumber* involved a corporation that retained a law firm to represent it in a lawsuit. After losing the underlying case, the corporation sued the defendant for legal malpractice. The law firm prevailed in the malpractice action. Relying on Corporations Code section 317, subdivision (d) [authorizing "an agent of a corporation" to seek indemnification where it "has been successful on the merits in defense of any proceeding" if the agent was made a party to an action by the corporation], the trial court awarded the law firm its attorney fees and expenses in defending the action.

The Court of Appeal reversed. But in doing so it did not simply rely on the law firm's status as an independent contractor to find the indemnity statute inapplicable. After acknowledging the rule quoted above, the court noted, "Nevertheless, although outside trial attorneys are independent contractors, they also 'fall within the category of agents. . . .' . . . [¶] Hence, in a broad and general sense, an outside attorney retained to represent a corporate client at trial is both an independent contractor and an agent. [Citation.] [¶] For this reason, whether an outside trial attorney is an agent of his or her corporate client within the meaning of section 317 must be determined by reference to the purpose of the statute. [Citations.]" (*Channel Lumber Co. v. Porter Simon, supra*, 78 Cal.App.4th at p. 1230.)

Summarizing Corporations Code section 317's purposes, "to afford reasonable protection to corporate agents" and "to impose safeguards to protect

shareholders by restricting indemnity to situations in which liability is sought to be imposed upon an individual by reason of the fact the person was an agent of a corporation" (*Channel Lumber Co. v. Porter Simon, supra*, 78 Cal.App.4th at p. 1231), the court concluded, "As demonstrated by the facts of this case, neither of these purposes is advanced by applying section 317 to an outside attorney retained by a corporation to represent it at trial, who then is sued by the corporation on the ground that the attorney committed legal malpractice while representing the corporation." (*Id.* at pp. 1231–1232.)

Thus, *Channel Lumber* does not stand for the proposition an attorney cannot be sanctioned in an arbitration proceeding for actions performed on behalf of his or her client in that forum. We conclude that, by voluntarily appearing for defendants in the arbitration proceedings, which included conducting prehearing discovery, and in responding to plaintiffs' claim some of the documents they produced were privileged material, objector subjected himself to the jurisdiction of the arbitration panel and was subject to its rulings. (1 Witkin, Cal. Procedure, *supra*, Attorneys, § 43, pp. 79–80.)

Alternatively objector claims there is both no factual basis for the panel's decision to sanction him and its ruling violated Code of Civil Procedure section 128.5 by not complying with that statute's procedural mandates. Both claims lack merit.

"[B]ecause it vindicates the intentions of the parties that the award be final, and because an arbitrator is not ordinarily constrained to decide according to the rule of law, it is the general rule that, 'The merits of the controversy between the parties are not subject to judicial review.' [Citations.] More specifically, courts will not review the validity of the arbitrator's reasoning. [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award. [Citations.] [¶] Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Moncharsh v. Heily & Blase, supra*, 3 Cal.4th at p. 11; see also *Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 407–408 [29 Cal.Rptr.3d 881].)

Objector admitted committing the conduct upon which the arbitrators based the sanctions order, copying documents plaintiffs had claimed were privileged material. He cites *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644 [82 Cal.Rptr.2d 799] to support a claim that copying the documents was not improper. *State Compensation* held, "When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should

refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged. The parties may then proceed to resolve the situation by agreement or may resort to the court for guidance with the benefit of protective orders and other judicial intervention as may be justified." (*Id.* at pp. 656–657; see also *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 817–818 [68 Cal.Rptr.3d 758, 171 P.3d 1092] [approving this rule].)

Contrary to objector's assertion, *State Compensation* did not approve of a receiving party copying privileged material and sending it to a third party. In fact, *State Compensation* suggests that where, as here, defendants objected to plaintiffs' demand for immediate return of the privileged documents, objector should have sought guidance from the arbitration panel rather than unilaterally copying the material and sending it to FINRA.

Finally, objector's reliance on Code of Civil Procedure section 128.5 does not assist him. "Generally, when faced with a petition to confirm or vacate an arbitration award, a court may not review the merits of the parties' controversy or claims that the arbitrator's decision is either legally or factually erroneous. [Citation.] ' "[A]rbitrators do not exceed their powers merely [by] assign[ing] an erroneous reason for their decision." [Citations.]' [Citation.]" (*Jones v. Humanscale Corp., supra*, 130 Cal.App.4th at p. 409.) Even "the existence of an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review." (*Moncharsh v. Heily & Blase, supra*, 3 Cal.4th at p. 33.)

The panel did not state it was relying on Code of Civil Procedure section 128.5 and nothing in the FINRA Code of Arbitration Procedures required the arbitrators to decide issues in accordance with California law. In fact, the parties' registered representative agreements, which contained the arbitration clause, declared the contract was to be governed by Colorado law. Under these circumstances, for the trial court to vacate the sanctions order would have amounted to "a classic case of the trial court declining to confirm an arbitration award because it disagree[d] with the merits of the decision." (*Jones v. Humanscale Corp., supra*, 130 Cal.App.4th at p. 409.)

2. *Plaintiffs' Request for Sanctions on Appeal*

In the respondent's brief, plaintiffs request we award them their costs and attorney fees for this appeal, claiming the appeal is frivolous. California Rules of Court, rule 8.276(b)(1) requires a request for appellate sanctions be made by a separate "motion . . . served and filed . . . no later than 10 days after the appellant's reply brief is due." Plaintiffs failed to comply with this procedural

requirement. That reason alone is grounds to deny the request. (*Kajima Engineering and Construction, Inc. v. Pacific Bell* (2002) 103 Cal.App.4th 1397, 1402 [127 Cal.Rptr.2d 464].)

## DISPOSITION

The judgment is affirmed. The request for sanctions on appeal is denied. Respondents shall recover their costs on appeal.

Aronson, J., and Fybel, J., concurred.

A petition for a rehearing was denied February 25, 2009, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 15, 2009, S171040.