Filed 3/25/25  Harvey v. Rebennack CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JAMES TED HARVEY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ANDREW REBENNACK et al.,<br><br>        Defendants and Appellants. | A170441<br><br>(San Francisco County<br>Super. Ct. No. CGC23610011) |

After his residential tenancy was terminated by means of an owner move-in eviction, James Ted Harvey sued Andrew Rebennack, Kathy Maionchi, Daniel Maionchi, Clark Maionchi, and Dominic Maionchi (defendants) alleging five causes of action including violations of the San Francisco Rent Stabilization and Arbitration Ordinance (Rent Ordinance). Defendants filed a motion to strike four of the causes of action under the anti-SLAPP statute (Code Civ. Proc, § 425.16).[1]

The trial court denied defendants' motion at the first step of the anti-SLAPP analysis based on its conclusion that defendants failed to meet their burden to show that the challenged claims arose from protected activity.

_____

[1] " 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1 (*Baral*).) Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

Defendants now appeal, arguing that because Harvey's claims arose from their protected activity in serving him with an eviction notice, the trial court erred in denying their motion. They argue that the trial court should have moved to the second step of the analysis and, in view of the evidence that the parties presented, determined that Harvey could not establish a probability of prevailing on his claims. Like the trial court, we conclude that defendants fail to show that Harvey's claims arise from protected conduct; accordingly, we will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Harvey's Complaint*

In December 2023, Harvey filed the operative first amended complaint for declaratory relief and damages, alleging that after he had lived for 10 years in a rent-controlled apartment in a residential building in San Francisco, his "tenancy was terminated pursuant to an owner move in eviction."[2] According to the complaint, defendants represented that

---

[2] The Rent Ordinance authorizes a landlord to "recover possession [of a rental unit] in good faith, without ulterior reasons and with honest intent" for the landlord's use or occupancy as his or her principal residence for at least 36 continuous months. (Rent Ordinance, § 37.9, subd. (a)(8)(i).) As relevant here, a "landlord" is "an owner of record of at least 25 percent interest in the property." (*Id.*, subd. (a)(8)(iii).) A "landlord may not recover possession . . . if a comparable unit owned by the landlord is already vacant and is available, or if such a unit becomes vacant and available before the recovery of possession," in which case the notice to vacate must be rescinded and any action to recover possession must be dismissed. (*Id.*, subd. (a)(8)(iv).) And, "if a non-comparable unit becomes available before the recovery of possession," that unit must be offered to the tenant. (*Ibid.*) The Rent Ordinance provides that it is evidence of a lack of good faith for a landlord to time the service of a notice to vacate or the filing of an action to recover possession "so as to avoid moving into a comparable unit, or to avoid offering a tenant a replacement unit." (*Ibid.*)

2

Rebennack, Kathy Maionchi, Daniel Maionchi, and Clark Maionchi each owned a 25 percent share of the property. Defendant Rebennack represented that there were no other apartments available to be offered to Harvey; that his "dominant motive for the eviction was to make [Harvey's apartment] his principal place of residence and that he was acting in good faith, without ulterior reasons and with honest intent." In April 2023, Harvey vacated his apartment in reliance on defendants' representations.

Harvey alleged five causes of action against the defendants; we discuss only the first, second, fourth, and fifth, which were the subject of plaintiffs' anti-SLAPP motion.

The first cause of action sought declaratory relief to determine whether there were non-disclosed owners of the property (including Dominick Maionchi); whether Rebennack was a "sham owner"; whether comparable and non-comparable apartments were available when his tenancy was terminated; whether defendants acted in good faith; whether defendants timed his eviction "knowing that other apartment were available or . . . were going to be available prior to when [Harvey] vacated the property"; whether the Maionchi defendants "aided and abetted the termination of [Harvey's] tenancy; and whether there was a conspiracy between the defendants.

The second cause of action alleged negligence arising from defendants' breaching their duty to exercise reasonable care in owning and operating the building. Among other things, Harvey alleged that defendants violated their duty not to interfere with his quiet enjoyment of the premises by failing to maintain the property "in a reasonable and code compliant manner" and by conspiring to displace him from his unit; violated the laws and rules governing the termination of his tenancy and recovery of his unit by forming a partnership and conspiracy to terminate his tenancy; and violated their

3

duty to fix certain enumerated problems with the unit, including lack of heat and ceiling leaks.

The fourth cause of action alleged that defendants violated Rent Ordinance section 37.10B, subdivision (a), which lists various acts that constitute tenant harassment if done in bad faith. Harvey alleged that defendants violated several provisions of that subdivision by disturbing his quiet enjoyment in bad faith, by failing to address substandard conditions and then wrongfully terminating his tenancy in violation of the applicable rules "and for financial gain," and by failing to fix the previously enumerated problems with the unit.

The fifth cause of action alleged that defendants violated Rent Ordinance section 37.9, subdivision (a)(8), which sets forth the conditions for an owner move-in eviction, by taking "steps to circumvent the Rent Ordinance's requirements" by evicting Harvey when they had comparable and non-comparable apartments and not offering them to him; by conspiring to have him evicted; and by concealing facts, including facts about ownership of the unit, motive, and availability of other apartments.

B.    *Anti-SLAPP Motion*

Defendants responded to Harvey's complaint with an anti-SLAPP motion to strike the first, second, fourth, and fifth causes of action, arguing that they arose from Rebennack serving Harvey with an owner move-in eviction notice and filing a copy of the notice with the San Francisco Rent Board.[3] They argued that Rebennack's actions were protected activities because they were undertaken pursuant to the Rent Ordinance requirements

---

[3] On appeal, defendants state that their anti-SLAPP motion was not directed toward Harvey's habitability claims, which we note are included in the challenged second and fourth causes of action.

4

for owner move-in evictions "and in conjunction with proceeding with an unlawful detainer action."  Defendants further argued that Harvey could not produce any evidence to support his claims.

Defendants supported the motion with a declaration in which Rebennack stated that he, Kathy Maionchi, Daniel Maionchi, and Clark Maionchi became owners of Harvey's unit in January 2023; that the same month he had caused a 60-day notice of termination of tenancy, or "owner move-in notice," to be served on Harvey; that the notice included the information required by law, including "the ownership structure" of Harvey's unit; and that he made no representations to Harvey regarding the circumstances of the owner move-in eviction apart from the owner move-in notice.  Rebennack filed an unlawful detainer action against Harvey in March 2023 "based on owner move-in eviction"; Harvey did not contest the unlawful detainer action; Harvey moved out of the unit in April; and the unlawful detainer action was subsequently dismissed without prejudice.  Rebennack declared that he moved into the unit before July 1, 2023 and that since then he had made the unit his principal residence.

In opposition, Harvey argued that defendants failed to "identify any allegation in the complaint of liability based on protected activity." (Capitalization omitted.)  Harvey argued that he was not seeking relief based on service of the eviction notice; instead, he sought relief based on allegations that defendants fraudulently invoked the Rent Ordinance to evict him from his rent-controlled apartment.  He further argued that his claims had the requisite minimal merit, as shown by the declarations of Harvey and his attorney that were submitted with the opposition.  And he argued that the trial court did not need to consider the anti-SLAPP motion with respect to

5

Harvey's first cause of action, seeking declaratory relief, which Harvey had dismissed pursuant to defendants' demurrers.[4]

After a hearing, the trial court issued an order denying the motion on the ground that defendants failed to show that the challenged causes of action arose from protected activity under section 425.16. Defendants timely appealed.

## DISCUSSION

A. *Applicable Law and Standard of Review*

As our Supreme Court has explained, "[t]he anti-SLAPP statute is 'designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)' " (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1008-1009 (*Bonni*).)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' (*Park* [*v. Board of Trustees of California State University* (2017)] 2 Cal. 5th [1057,] 1061 [(*Park*)].) Second, for each claim that does

_____

[4] Defendants filed demurrers to Harvey's complaint on the same day they filed their anti-SLAPP motion; in response to the demurrers, Harvey dismissed his first cause of action. On appeal, defendants do not discuss Harvey's first cause of action in their arguments on the first step of the anti-SLAPP analysis, and we do not discuss it further.

6

arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' (*Ibid.*)" (*Bonni, supra*, 11 Cal.5th at p. 1009.)

In the first step of the analysis, courts determine "whether the plaintiff's claims arise from protected activity. At this first step, courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' (*Park, supra*, 2 Cal.5th at p. 1063.)" (*Bonni, supra,* 11 Cal.5th at p. 1009.) To determine whether challenged claims arise from protected activity we consider the pleadings and "affidavits concerning the facts upon which liability is based." (*Park* at p. 1067.) "The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni* at p. 1009.) Section 425.16, subdivision (e), identifies four categories of protected activity. As relevant here, those categories include "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).)

If the court finds that the defendant has met its burden with respect to the first step of the analysis, the court proceeds to the second step, which requires it to "determine whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) In making this determination, the court's "inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiffs' evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.

[Citation.]  '[C]laims with the requisite minimal merit may proceed.' " (*Baral, supra*, 1 Cal.5th at pp. 384-395.)

We review an order granting or denying a motion to strike under section 425.16 de novo.  (*Park, supra*, 2 Cal.5th at p. 1067.)

B.    *Analysis*

At the first step of the anti-SLAPP analysis, "the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." (*Baral, supra*, 1 Cal.5th at p. 396.) Even if a cause of action is " 'triggered' by protected activity," the cause of action does not necessarily arise from protected activity:  "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier, supra*, 29 Cal.4th at p. 89.)  We must "respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Park, supra*, 2 Cal.5th at p. 1064.)  A claim is subject to an anti-SLAPP motion to strike "only if the speech or petitioning activity *itself* is the wrong complained of." (*Id.* at p. 1060.)  "Thus, where a plaintiff's claim is based upon 'an action or decision' of the defendant, it is not enough that some protected activity by the defendant *precedes* that action or decision, that some protected activity *is the means of communicating* that action or decision, or that some protected activity *constitutes evidence of* that action or decision.  To fall under the anti-SLAPP statute, the challenged action or decision itself must *be* protected activity. (*Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 700, citing *Park, supra*, 2 Cal.5th at pp. 1060-1061.)  "If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions

8

to protected activity will not trigger application of the anti-SLAPP statute." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.)

Defendants attempt to meet their burden at the first stage of the analysis by contending that Harvey "has alleged wrongful endeavor/eviction and 'tenant harassment' claims . . ., as well as negligence and breach of quiet enjoyment claims, arising from the making of false statements to him concerning motive, ownership, etc."[5]  Defendants argue that the allegedly false statements were made only in the eviction notice and the complaint in their unlawful detainer action, and that the eviction notice and unlawful detainer action "constitute the 'endeavor' to recover possession" and that "without these writings there could be no alleged 'fraud' (because there would be no representation, let alone a misrepresentation) and no alleged 'endeavor.' "  Defendants do not identify the specific portions of the complaint they seek to strike or the elements of any of Harvey's causes of action that rest on protected activity; instead, they state in a conclusory fashion that "Harvey cannot possibly state his fraudulent wrongful eviction claim without pleading statements made in the [protected] [e]viction [n]otice and then alleging that they were false."

For his part, Harvey concedes that the service of the eviction notice and the filing of an unlawful detainer action are protected activities.  But he argues that his claims are not based on the service of the eviction notice or on

_____

[5] Defendants appear to use the words "wrongful endeavor" and "wrongful eviction" as shorthand for Harvey's fifth cause of action, which alleges violation of Rent Ordinance section 37.9.  The phrases are derived from the Rent Ordinance provision authorizing a tenant to "institute a civil proceeding for injunctive relief [and] money damages" if "a landlord *wrongfully endeavors to recover possession or recovers possession* of a rental unit in violation of" Rent Ordinance section 37.9.  (Rent Ordinance, § 37.9, subd. (f), italics added.)

9

the filing of the unlawful detainer, which is not even mentioned in the complaint, or on the making of false statements in the eviction notice; his claims are instead based on defendants' failure to comply with the requirements of the Rent Ordinance for owner move-in evictions.

Harvey has the better argument. Defendants insist that Harvey's case is "based on the service of the [owner move-in] notice" and that his claim "is simply that the [owner move-in notice] was allegedly served in bad faith (i.e., was somehow bogus)." But defendants' insistence that Harvey's claims are based on the eviction notice does not make it so. And the mere facts that Harvey's complaint outlines the representations made in the eviction notice, and alleges that defendants "misrepresented" who owned the property and their motive for evicting him and concealed facts about the availability of other apartments do not mean that Harvey's claims arose from the eviction notice for purposes of the anti-SLAPP statute. The claims that defendants are challenging here are essentially claims that they violated the provisions of the Rent Ordinance governing owner move-in evictions, and the issue in this appeal is whether those Rent Ordinance claims are subject to the anti-SLAPP statute.

We have examined the pertinent decisions on the application of the anti-SLAPP law to landlord-tenant matters at length in *Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940, 950-953 (*Delois*) and *Moriarty v. Laramar Management Corp.* (2014) 224 Cal.App.4th 125, 136-139 (*Moriarty*). We draw on our discussion in *Delois* and *Moriarty* here to provide a brief summary of two important cases: *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154 (*Marlin*) and *Clark v. Mazgani* (2009) 170 Cal.App.4th 1281 (*Clark*).

10

In *Marlin*, tenants filed a declaratory relief action after their landlords served notice that they intended to withdraw certain rental units from the market under the Ellis Act (Gov. Code, § 7060 et seq.). (*Marlin, supra*, 154 Cal.App.4th at p. 157.) Plaintiffs alleged that a controversy existed in that plaintiffs contended the landlords were not entitled to invoke or rely on the Ellis Act, while the landlords contended that they were. (*Ibid.*) The defendant landlords filed an anti-SLAPP motion, arguing that the complaint arose from their protected acts of filing and serving the required Ellis Act notices. (*Id.* at p. 158.) The trial court granted the motion, but the Court of Appeal reversed, observing that "the critical question in a SLAPP motion 'is whether the cause of action is *based* on the defendant's protected free speech or petitioning activity.' [¶] Defendants have fallen victim to the logical fallacy *post hoc ergo propter hoc*—because the notices preceded plaintiffs' complaint the notices must have caused plaintiffs' complaint. The filing and service of the notices may have triggered plaintiffs' complaint and the notices may be evidence in support of plaintiffs' complaint, but they were not the cause of plaintiffs' complaint. Clearly, the cause of plaintiffs' complaint was defendant's allegedly wrongful reliance on the Ellis Act as their authority for terminating plaintiffs' tenancy. Terminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech." (*Id.* at pp. 160-161, fns. omitted.) "[T]he [plaintiffs'] suit is not based on the defendants' filing and serving of a notice required under the Ellis Act, it is based on the [plaintiffs'] contention 'defendants are not entitled to invoke or rely upon the Ellis Act to evict plaintiffs from their home." (*Id.* at pp. 161-162.)

In *Clark*, a landlord served and filed the requisite notices to evict a tenant, allegedly to make the tenant's unit available to the landlord's

daughter, as permitted by the local rent ordinance. (*Clark*, *supra*, 170 Cal.App.4th at p. 1284.) The tenant was evicted after the landlord prevailed in an unlawful detainer action, and subsequently sued the landlord for fraud, unlawful eviction, and unfair business practices. (*Ibid*.) The tenant alleged that the landlord "made fraudulent misrepresentations in the unlawful detainer action, and never meant for her daughter to reside in [the] apartment." (*Id.* at p. 1285.) Instead, the landlord allegedly kept the apartment unoccupied in violation of the applicable rent ordinance and performed renovations with the goal of renting the unit to a new tenant at a higher rent. (*Ibid*.) The landlord filed an anti-SLAPP motion, arguing that the complaint arose from her privileged communications, including serving the eviction notice. (*Ibid*.) The trial court granted the anti-SLAPP motion, and the Court of Appeal reversed, holding that the tenant's complaint was "not premised on [landlord's] protected activities of initiating or prosecuting the unlawful detainer action, but on her removal of the apartment from the rental market and fraudulent eviction of [tenant] for the purpose of installing a family member who never moved in." (*Id.* at p. 1286.)

The *Clark* court found *Marlin* instructive, and concluded that the reasoning in *Marlin* applied to the case before it: the tenant's action in *Clark* "is not based on [landlord's] filing or service of the notices of intent to evict, it is not based on anything [landlord] said in court or a public proceeding, and it is not based on the fact that [landlord] prosecuted an unlawful detainer action against her. The complaint is based on [landlord's] allegedly unlawful eviction, in that she fraudulently invoked the [rent ordinance] to evict [tenant] from her rent-controlled apartment as a ruse to provide housing for her daughter, but never installed her daughter in the apartment as required

12

by that ordinance, and also that she failed to pay Clark's relocation fee." (*Clark*, *supra*, 170 Cal.App.4th at p. 1288.)

Likewise here:  Harvey's suit is not based on the eviction notice; it is based on his claim that defendants fraudulently invoked the owner move-in eviction provision of the Rent Ordinance to evict Harvey from his rent controlled apartment as a ruse to provide housing for a purported 25 percent owner of the property, even though other apartments were available. Defendants were "not sued for exercising constitutional rights.  [They were] sued to compel compliance with the provisions of the [Rent Ordinance]. [Harvey's] suit was unquestionably 'triggered by' [defendants'] statements [in the eviction notice].  But the suit is *not based on* those statements.  It is based on [Harvey's] claim that [defendants] fraudulently invoked the [owner move-in eviction provision of the Rent Ordinance] to effect [Harvey's] eviction." (*Clark*, *supra*, 170 Cal.App.4th at pp. 1289-1290.)[6]

In arguing that the statements made in the eviction notice are subject to the anti-SLAPP law, defendants rely on three cases:  *Birkner v. Lam* (2007) 156 Cal.App.4th 275 (*Birkner*), *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467 (*Feldman*), and *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169 (*Wallace*).

As we have previously explained in *Delois*, *supra*, 177 Cal.App.4th at pages 952-953, and *Moriarty*, *supra*, 224 Cal.App.4th at pages 137-138, the

---

[6] Defendants argue that *Clark* is distinguishable from the case before us because *Clark* "did not involve a claim that the landlord had misrepresented the initial conditions that justified service of the notice in the first place."  Defendants are incorrect.  *Clark* states explicitly that the plaintiff "claimed [the landlord] made fraudulent misrepresentations in the unlawful detainer action and never meant for her daughter to reside in Clark's former apartment." (*Clark*, *supra*, 170 Cal.App.4th at p. 1285.)

court in *Clark* distinguished *Birkner* and *Feldman*, upon which the landlord in *Clark* had relied. (*Moriarty*, *supra*, 224 Cal.App.4th at p. 137; *Delois*, *supra*, 177 Cal.App.4th at p. 952.) We need not discuss *Birkner* and *Feldman* in detail here. Suffice it to say that those two cases are of limited value in supporting defendants' position: " '*Birkner* and *Feldman* have been criticized for failing to recognize that the critical consideration is whether the claim is *based on* defendant's protected free speech of petitioning activity. The mere fact that a claim may have been *triggered* by protected activity (such as service of unlawful detainer papers) does not necessarily mean it *arose* from that activity.' " (*Oakland Bulk and Oversized Terminal, LLC v. City of Oakland* (2020) 54 Cal.App.5th 738, 747, fn. 6, quoting Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2019) ¶ 7:798; see also *Ben-Shahar v. Pickart* (2014) 231 Cal.App.4th 1043, 1052-1053 [distinguishing *Clark*, *Marlin*, and "numerous cases [addressing] anti-SLAPP motions that were not properly advanced in the context of a landlord-tenant dispute" from *Birkner* and *Feldman*, in which "the eviction notices and unlawful detainer actions were . . . the 'sole basis for liability' "].) We conclude that the service of the eviction notice on Harvey preceded or triggered his suit, but was not the basis of the suit—the basis was his claim that defendants failed to comply with the requirements of the Rent Ordinance and therefore were not entitled to rely on the provisions permitted owner move-in evictions.

The other case on which defendants primarily rely is *Wallace,* in which a tenant's cause of action for wrongful eviction alleged that the landlord's dominant motive in attempting to recover possession was not one of the permissible grounds enumerated in the Rent Ordinance. (*Wallace*, *supra*, 196 Cal.App.4th at p. 1182.) The Court of Appeal found that the cause of

action was based on protected activity, specifically, the service of an eviction notice and the filing of an unlawful detainer action. (*Id.*, at pp. 1182-1183.) But we find *Wallace* unpersuasive: it relies on *Birkner* and *Feldman*, and "dismisses *Clark* in conclusory fashion in a footnote." (*Moriarty, supra*, 224 Cal.App.4th at p. 139.)

More persuasive is *Ulkarim v. Westfield, LLC* (2014) 227 Cal.App.4th 1266 (*Ulkarim*), in which a commercial tenant alleged that her landlord breached an agreement by " 'giving unilateral notice of termination [of tenancy] without cause and in bad faith for the purpose of transferring Plaintiffs' successful business to [a third party].' " (*Id.* at p. 1271.) The trial court granted the landlord's anti-SLAPP motion based on its conclusion that the complaint was based on the protected activity of serving a notice of termination. (*Id.* at p. 1272.) The tenant appealed, and the Court of Appeal reversed. (*Id.* at p. 1270.) The Court of Appeal discussed in depth a host of cases addressing terminations of tenancy, including *Marlin* and *Clark*, and concluded that the complaint in *Ulkarim* was not based on the service of a notice of termination or filing of an unlawful detainer complaint, but was instead based on the landlord's "decision to terminate or other conduct in connection with the termination." (*Id.* at pp. 1276-1281) The Court of Appeal observed that it was "exceedingly difficult to reconcile" *Birkner* and *Feldman* with the other cases it had discussed and "decline[d] to follow *Birkner* and *Feldman* to the extent that those opinions suggest a rule contrary to our conclusion." (*Id.* at p. 1281.) In our case, as in *Ulkarim*, the plaintiff is challenging "the underlying decision to terminate" his tenancy, not the service of the eviction notice. (*Ibid.*)

Defendants argue for the first time on appeal that our Supreme Court's decision in *Action Apartment Association, Inc. v. City of Santa Monica* (2007)

15

41 Cal.4th 1232 (*Action Apartment*) requires us to conclude at the first step of the anti-SLAPP analysis that Harvey's claims are based on protected activity and also requires us to conclude that Harvey's claims for damages are barred by the litigation privilege. *Action Apartment*, which does not address the anti-SLAPP law, was an action brought by landlords to challenge the City of Santa Monica's "Tenant Harassment" ordinance that prohibited a landlord from "maliciously serving a notice of eviction or bringing any action to recover possession of a rental unit without a reasonable factual or legal basis" and provided for criminal and civil penalties for violation of the ordinance. (*Id.* at pp. 1238-1239.) *Action Apartment* held that the challenged provision "conflicts with, and is preempted by, the litigation privilege to the extent it prohibits, criminalizes, and establishes civil penalties for eviction notices where litigation is contemplated in good faith and under serious consideration." (*Id.* at p. 1252.)

Defendants' arguments based on *Action Apartment* are not entirely clear, but appear to be that when a tenancy has been terminated by means of an eviction notice and an unlawful detainer action has been filed, the litigation privilege attaches to the eviction notice and, by extension, the protections of the anti-SLAPP statute also attach to the eviction notice. Because Harvey's challenge to the termination of his tenancy is, in defendants' view, "based on" allegedly false statements in the privileged eviction notice, his challenge is subject to an anti-SLAPP motion and would be barred by the litigation privilege. Defendants' position is that Harvey could not sue for damages based on a challenge to the eviction notice unless he had defended against the unlawful detainer action and established in that action that the eviction notice was in defendant's words "bogus"—in which case Harvey's remedy would be to sue for malicious prosecution.

16

We decline to exercise our discretion to address defendants' arguments concerning *Action Apartment*, which were not raised below. (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 [appellate courts generally " 'ignore arguments [and] authority . . . not presented and litigated in the trial court' "].) But the arguments are not persuasive in any event. We reject defendants' contention that the causes of action in Harvey's complaint at issue in this appeal are challenges to the eviction notice. Like the court in *Ulkarim*, we distinguish between "cause[s] of action based on the service of a notice in connection with the termination of a tenancy or filing of an unlawful detainer complaint" and causes of action like Harvey's which are "based on the decision to terminate or other conduct in connection with the termination." (*Ulkarim, supra,* 227 Cal.App.4th at p. 1276 [citing cases that recognize the distinction, including *Clark* and *Marlin*].) We disagree with defendants' suggestion that this distinction is inconsistent with *Action Apartment*, and we note that although *Action Apartment* was decided almost 18 years ago, and although it has been cited and discussed in some anti-SLAPP cases, including *Birkner* and *Feldman*, defendants do not contend that any case has adopted their analysis of its implications.

Because we conclude that defendants have not met their burden at the first step of the anti-SLAPP analysis, we do not reach step two. There will be time enough to address the merits when the case is remanded to the trial court.

C. *Request for Sanctions*

In his respondent's brief, Harvey requests an award of attorney fees as a sanction on the ground that the appeal is frivolous. However, Harvey has not filed a separate sanctions motion supported by a declaration as required by California Rules of Court, rule 8.276(a), (b). (See *Cowan v. Krayzman*

(2011) 196 Cal.App.4th 907, 919 ["[s]anctions cannot be sought in the respondent's brief"].)  The request for sanctions is denied.  (See *Bak v. MCL Financial Group, Inc.* (2009) 170 Cal.App.4th 1118 [failure to comply with procedure for requesting appellate sanctions is grounds to deny the request].)

### DISPOSITION

The challenged order is affirmed.  Harvey shall recover his costs on appeal.

_____
Miller, J.

WE CONCUR:

_____
Stewart, P.J.

_____
Richman, J.

A170441, *Harvey v. Rebennack et al.*

18